## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LILLIAN SMITH, on behalf of S.C.W.,

        Plaintiff,

vs.                                Case No.  8:16-cv-1034-T-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.

_____/

## OPINION AND ORDER[2]

### I. Status

Lillian Smith, on behalf of her minor grandchild, S.C.W., is appealing the

Commissioner of the Social Security Administration's final decision denying a claim for

child's supplemental security income ("SSI"). For purposes of this Opinion and Order, the

designation "Claimant" refers to the minor child, S.C.W., who was an "adolescent" when the

claim was filed, and the designation "Plaintiff" refers to her grandmother, Lillian Smith.

Claimant's alleged disability is a result of attention deficit disorder. Transcript of

Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed August 26,

2016, at 51, 59, 172.  On October 15, 2012, Plaintiff filed an application for SSI on behalf of

Claimant, who was born on August 22, 1999 and alleged to have been disabled as of

---

[1]     Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed August 26, 2016; Reference Order (Doc. No. 13), entered August 29, 2016.

October 15, 2012. Tr. at 51-57.  The application was denied initially, Tr. at 51-57, 58, 69-75, and was denied upon reconsideration, Tr. at 59-67, 68, 77-83.

On August 20, 2014, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Claimant, who was represented by counsel, and Plaintiff. Supplemental Transcript of Administrative Proceedings (Doc. No. 12; "Supp. Tr."), filed August 26, 2016, at 416-34. On October 6, 2014, the ALJ issued a decision finding Claimant not disabled through the date of the ALJ's Decision. Tr. at 22-34.

The Appeals Council then accepted additional evidence in the form of a brief authored by Claimant's counsel. Tr. at 4, 5; see Tr. at 250-52 (brief). On March 2, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On April 28, 2016, Plaintiff commenced this action under 42 U.S.C. § 1383(c)(3),[3] by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes one argument on appeal: "The ALJ's evaluation of the severity of [Claimant's] limitation[s] in the functional domains is not supported by substantial evidence." Memorandum of Law (Doc. No. 15; "Pl.'s Mem."), filed October 31, 2016, at 12 (some capitalization omitted). Specifically, Plaintiff takes issue with the ALJ's finding that Claimant has no limitation in the domain of acquiring and using information and a less than marked limitation in the domain of attending and completing tasks. See id. at 12-16. On January 6, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") addressing the argument made by Plaintiff. After a thorough review of the

_____

[3] Although Plaintiff is seeking review of the Commissioner's decision regarding Claimant's claim for child's SSI, Plaintiff's complaint does not state she is seeking review under § 1383(c)(3). Section 1383(c)(3), which incorporates § 405(g), grants the Court jurisdiction to review these decisions. See 42 U.S.C. § 1383(c)(3).

entire record and consideration of the parties' respective filings, the undersigned finds the Commissioner's final decision is due to be affirmed.

## II.  The Disability Evaluation Process for Children

An individual "under the age of 18 [is] consider[ed] . . . disabled if [the individual] ha[s] a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.906; see 42 U.S.C. § 1382c(a)(3)(C)(i).  When determining whether an individual under the age of eighteen is disabled, an ALJ must follow the three-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; and (3) the impairment(s) meet, medically equal, or functionally equal any of the impairments set forth in the Listings.  20 C.F.R. § 416.924; see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278-79 (11th Cir. 2004) (explaining the three-step sequential evaluation process for children); T.R.C. v. Comm'r, Soc. Sec. Admin., 553 F. App'x 914, 918 (11th Cir. 2014) (unpublished); Turberville v. Astrue, 316 F. App'x 891, 892 (11th Cir. 2009) (unpublished).

With respect to the analysis conducted at step three, an ALJ considers the combined effect of all medically determined impairments, even those that are not severe.  20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c).  The ALJ then looks to "objective criteria set forth in [the Regulations]" to determine whether the impairment(s) cause severe and marked limitations.  Shinn, 391 F.3d at 1278; see also Jackson v. Astrue, 734 F. Supp. 2d

1343, 1357 (N.D. Ga. 2010). The Regulations contain the Listings "specifying almost every sort of [impairment] from which a person can suffer, sorted into general categories." Shinn, 391 F.3d at 1278 (citing 20 C.F.R. § 416.925(a)). Each listed impairment contains a discussion of the different limitations on the child's abilities that the impairment may impose. Id. (citing 20 C.F.R. § 416.925(a)). Limitations appearing in the Listings "are considered 'marked and severe.'" Id. (citing 20 C.F.R. § 416.925(a)).

Limitations resulting from a child's impairment(s) meet "the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment." Id. Limitations resulting from a child's impairments medically equal "the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'" Id. (quoting 20 C.F.R. § 416.926(a)(2)).

Even if the child's limitations do not medically equal the Listings, "the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings." Id. To make that determination, "the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities," using "six major domains of life[.]" Id. Those domains are:

> (i) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for [one]self; and,
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1); see also T.R.C., 553 F. App'x at 918 (citation omitted). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked limitations in

-4-

two of the domains [above], or an extreme limitation in one domain.'" Shinn, 391 F.3d at 1279 (alteration in original) (quoting 20 C.F.R. § 416.926a(d) and citing 20 C.F.R. § 416.925(a)).

## **III. The ALJ's Decision**

The ALJ followed the required three-step sequential evaluation process for children. Tr. at 25-33. At step one, after recognizing Claimant "was an adolescent on October 15, 2012, the date the application was filed, and [was] an adolescent [at the time of the Decision]," the ALJ determined that Claimant had not engaged in substantial gainful activity at any time relevant to the Decision. Tr. at 25 (emphasis and citation omitted). Next, at step two, the ALJ found Claimant suffers from "the following severe impairments: attention deficit hyperactivity disorder [("ADHD")] and depressive disorder NOS." Tr. at 25 (emphasis and citation omitted).

At step three, the ALJ found that "[C]laimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 25 (emphasis and citation omitted). The ALJ then determined that "[C]laimant does not have an impairment or combination of impairments that functionally equals the severity of the listings." Tr. at 26. In terms of the six major domains of life, the ALJ ascertained the following: "[C]laimant has no limitation in acquiring and using information," Tr. at 29 (emphasis omitted); "[C]laimant has [a] less than marked limitation in attending and completing tasks," Tr. at 30 (emphasis omitted); "[C]laimant has no limitation in interacting and relating with others," Tr. at 31 (emphasis omitted); "[C]laimant has no limitation in moving about and manipulating objects," Tr. at 32 (emphasis omitted); "[C]laimant has no limitation in the ability to care for herself,"

Tr. at 33 (emphasis omitted); and "[C]laimant has no limitation in health and physical well-being," Tr. at 33 (emphasis omitted). Accordingly, the ALJ concluded that "Claimant has not been disabled . . . since October 15, 2012, the date the application was filed." Tr. at 34 (emphasis and citation omitted).

## IV. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## V.  Discussion

As noted above, Plaintiff contends substantial evidence does not support the ALJ's finding that Claimant has no limitation in the domain of acquiring and using information and a less than marked limitation in the domain of attending and completing tasks. Pl.'s Mem. at 13-14 (acquiring and using information), 14-16 (attending and completing tasks). The undersigned first sets out the applicable law. Then, Plaintiff's arguments as to these two domains are addressed.

## A.  Applicable Law

The domain of acquiring and using information is used to consider how well a claimant acquires and learns information, and how well a claimant uses that information. 20 C.F.R. § 416.926a(g).  Adolescents should be able to: "use what [they] have learned in daily living situations without assistance"; "comprehend and express both simple and complex ideas, using increasingly complex language"; and "apply these skills in practical ways that will help [them] enter the workplace after [they] finish school." 20 C.F.R. § 416.926a(g)(2)(v). The Regulations provide examples of limited functioning in this domain that do not necessarily describe a marked or extreme limitation: lack of understanding words about space, size, or time; inability to rhyme words; difficulty recalling things learned in school yesterday; difficulty solving mathematics questions; and talking only in short, simple sentences with difficulty explaining meaning.  See 20 C.F.R. § 416.926a(g)(3).

The domain of attending and completing tasks is used to consider how well a claimant is able to focus and maintain attention, and how well the claimant begins, carries through, and finishes activities, including the pace at which those activities are performed. 20 C.F.R. § 416.926a(h).  Adolescents "should be able to pay attention to increasingly

longer presentations and discussions[;] maintain [their] concentration while reading textbooks[;] . . . independently plan and complete long-range academic projects"; "organize [their] materials"; "plan [their] time in order to complete school tasks and assignments"; "maintain [their] attention on a task for extended periods of time"; and "not be unduly distracted by [their] peers or unduly distracting to [their peers] in a school or work setting." 20 C.F.R. § 416.926a(h)(2)(v). The Regulations provide examples of limited functioning in this domain that do not necessarily describe a marked or extreme limitation: the claimant is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; the claimant is slow to focus on or fails to complete activities of interest, like games or art projects; the claimant repeatedly becomes sidetracked or frequently interrupts others; the claimant is easily frustrated and gives up on tasks; the claimant requires extra supervision. 20 C.F.R. § 416.926a(h)(3).

## B. ALJ's Decision / Analysis

The ALJ found that Claimant has no limitation in the domain of acquiring and using information. Tr. at 29. In doing so, she specifically noted that "[C]laimant's 2013-2014 school records show that year-to-date[, C]laimant has been able to maintain a 2.938 grade point average in regular classes, grades consistent with those reported during her psychological examinations." Tr. at 29 (citations omitted). Plaintiff argues that, with respect to these findings, "the ALJ completely ignored and failed to even mention the many accommodations that had been made for [Claimant] and the ways she was not functioning every day and in all settings similarly to other children of the same age who did not have impairments." Pl.'s Mem. at 13. Responding, Defendant contends that "Plaintiff . . . does not

cite evidence that [Claimant] still receives these accommodations, with her last 504 Plan[4] being from [sixth] grade." Def.'s Mem. at 10.

In the domain of attending and completing tasks, the ALJ found Claimant's limitations to be less than marked. Tr. at 30. The ALJ again relied on Claimant's 2013-2014 school records, and observed that "each of her four teachers who completed questionnaires opined that [Claimant] has no more than [a] slight limitation in her ability to attend and complete tasks." Tr. at 30 (citation omitted). In arguing that this domain finding is erroneous, Plaintiff points out that "two of the teachers who completed questionnaires opined that [Claimant] had obvious problems in her ability to attend and complete tasks." Pl.'s Mem. at 15. Responding, Defendant argues that "[s]ubstantial evidence supports the ALJ's finding that [Claimant] had less than a marked limitation in the domain of attending and completing tasks." Def.'s Mem. at 12. According to Defendant, "the ALJ . . . properly considered the questionnaires completed by [Claimant's] teachers" and "there is no evidence [Claimant's] diagnosis resulted in disabling limitations." Id. at 12-13.

The ALJ's findings regarding the challenged domains are supported by substantial evidence. In particular, Claimant's most recent school records, questionnaires completed by four of Claimant's teachers, and the medical evidence indicate the ALJ did not err in making these findings.

---

4          "The 504 Plan is a plan developed to ensure that a child who has a disability identified under the law and is attending an elementary or secondary educational institution receives accommodations that will ensure their academic success and access to the learning environment." Hollis v. Colvin, No. 15-0270-M, 2016 WL 126400, at *6 n.6 (S.D. Ala. Jan. 11, 2016) (quoting What is the Difference Between an IEP and a 504 Plan?, University of Washington, http://www.washington.edu/doit/what-difference-between-iep-and-504-plan (last visited September 25, 2017)).

### 1. School Records

Claimant's 2013-2014 report card (eighth grade) indicates she had a 2.938 grade point average. Tr. at 244. In the first semester, Claimant obtained two As, three Bs, and three Cs.[5] Tr. at 244. In the second semester, she obtained one A, six Bs, and one C. Tr. at 244. Under the comment section of the report card, three teachers commented, "Good Effort" and one teacher commented, "Good Class Participation." Tr. at 244. No teacher indicated that Claimant was "[w]orking [b]elow [g]rade [l]evel" or that she was working under a "[m]odified [c]urriculum." See Tr. at 244.

### 2. Teacher Questionnaires

The administrative transcript contains four "Teacher Questionnaires." See Tr. at 177-84, 218-25, 226-33, 236-43. Each questionnaire was completed by a different teacher during Claimant's seventh-grade year. In the questionnaire, the teacher was asked to rate Claimant's functioning in each of the six domains and in a number of activities under five of the six domains. See Tr. at 178-83, 219-24, 227-32, 237-42. The activities were rated using the following scale: 1) no problem; 2) a slight problem; 3) an obvious problem; 4) a serious problem; and 5) a very serious problem. See Tr. at 178-83, 219-24, 227-32, 237-42.

Michelle Mallino, Claimant's math teacher, completed a questionnaire on November 16, 2012. Tr. at 177, 184; see Tr. at 177-84 (questionnaire). At the time she completed the questionnaire, she had known Claimant for four months. Tr. at 177. In the domain of acquiring and using information, she rated Claimant's problems as "slight" in five of the ten activities and opined Claimant had "no problem" in five. Tr. at 178. In the domain of

---

[5]     According to the grading key in the report card, an A is "[o]utstanding," a B is "[a]bove [a]verage," and a C is "[a]verage." Tr. at 244.

attending and completing tasks, she indicated there were "[no] problems observed in this domain[ and] functioning appears age-appropriate." Tr. at 179.

Hope Fox, Claimant's reading teacher, completed a questionnaire on April 16, 2013.[6] Tr. at 218, 225; see 218-25 (questionnaire). In the domain of acquiring and using information, she opined Claimant had "no problem" performing two of the ten activities, an "obvious problem" performing six, and a "serious problem" performing one.[7] Tr. at 219. With respect to attending and completing tasks, she opined Claimant had "no problem" in seven of the thirteen activities, and a "slight problem" performing four.[8] Tr. at 220.

Amanda Emerfoll was Claimant's math teacher.[9] Tr. at 226; see Tr. at 226-33 (questionnaire). In the domain of acquiring and using information, she opined that Claimant had "no problem" performing two of the ten activities and a "slight problem" performing eight. Tr. at 227. In the domain of attending and completing tasks, she opined Claimant had "no

---

[6]     Ms. Fox did not specify the year she completed the questionnaire, see Tr. at 225; however, she stated she had known Claimant "[s]ince January 2013 ([approximately four] months)." Thus, the undersigned presumes she completed the questionnaire in 2013.

[7]     Ms. Fox did not rate one of the activities ("[c]omprehending and doing math problems"). Tr. at 219.

[8]     Ms. Fox did not rate two of the activities ("[s]ustaining attention during play/sports activities" and "[f]ocusing long enough to finish assigned activity or task"). Tr. at 220.

[9]     The questionnaires indicate Claimant had two math teachers in the seventh grade, one for each semester. It appears Ms. Emerfoll taught Claimant during the second semester because she completed the questionnaire on April 19, 2013 and stated that at the time she completed the questionnaire, she had known Claimant for three months. Tr. at 226, 233. Claimant's other math teacher, Ms. Mallino, appears to have taught Claimant during the first semester because, as noted above, she completed the questionnaire in November 2016 and stated she had known Claimant for four months. Tr. at 177, 184.

problem" performing seven of the thirteen activities, a "slight problem" performing four, and an "obvious problem" performing two.[10] Tr. at 228.

The fourth questionnaire is anonymous and does not state the date it was completed. See Tr. at 236-43. In the questionnaire, the teacher stated he or she taught Claimant language arts and has known Claimant "[t]his school year." Tr. at 236. In the domain of acquiring and using information, the teacher opined Claimant had a "slight problem" performing two of the ten activities, an "obvious problem" performing four, and a "serious problem" performing four. Tr. at 237. In the domain of attending and completing tasks, the teacher rated Claimant's problems as "slight" in four of the thirteen activities and "obvious" in eight.[11] Tr. at 238.

### 3. Psychiatric Records

Psychiatric records from Peace River Center ("Peace River") consistently show that Claimant's "[a]ttention/[c]oncentration" is "fair" and that her "[m]emory/[o]rientation," "[t]hought [p]rocess," "[t]hought [c]ontent," "[i]ntelligen[ce]/[f]und of [k]nowledge," and "[t]hought/[j]udgment" are all "[a]ge-[a]ppropriate." Tr. at 278-81, 335-37. Peace River records also indicate that Claimant's recent and remote memory are "[i]ntact," Tr. at 353, 359, her thought process is "[o]rganized," and her thought content is "[l]ogical," Tr. at 353, 359, 364, 407. Some of the records indicate Claimant's concentration is "[l]imited," Tr. at

---

[10]     With regard to both domains, Ms. Emerfoll opined that there were "[no] problems observed . . . [and] functioning appears to be age-appropriate." Tr. at 227, 228. The teacher may have misunderstood the questionnaire because, as noted, she rated the activities under both domains and indicated Claimant had a slight problem performing some of them and an obvious problem performing two of them. See Tr. at 227-28. Upon review of the questionnaire as a whole, including Ms. Emerfoll's handwritten comments, the undersigned believes she may have intended to opine that while Claimant has a slight or obvious problem performing certain activities, her functioning is nonetheless age-appropriate.

[11]     The teacher did not rate one of the activities ("[s]ustaining attention during play/sports activities"). See Tr. at 238.

364, 407, while others state it is "[i]ntact," Tr. at 353, 359.  Peace River records, including

those reporting Claimant's concentration is limited, also show that Claimant is "doing well."

Tr. at 335 (note indicating "[Claimant] is doing well"), Tr. at 353 (note indicating "[Claimant]

is doing well on [medication]"), Tr. at 359 (note indicating "[Claimant] is doing well[ and]

would like to continue medicine") (internal quotation mark omitted), Tr. at 363 (note

indicating "[Claimant] is doing well" and "[m]edicine helps in paying attention, focusing on

work") (internal quotation marks omitted), Tr. at 407 (note indicating "[Claimant] is doing well

at school") (internal quotation mark omitted).

### 4.  Analysis

The undersigned finds the ALJ did not err in finding that Claimant has no limitation

in the domain of acquiring and using information and a less than marked limitation in the

domain of attending and completing tasks. First, the 2013-2014 school records indicate

Claimant's performance is mostly above average. See Tr. at 244. Although Plaintiff contends

that the ALJ did not consider the accommodations that have been made for Claimant, Pl.'s

Mem. at 13, there is nothing in the administrative transcript showing that Claimant is

currently receiving these accommodations.[12] Second, even if Plaintiff is correct that the ALJ

was inaccurate in stating all four teachers opined Claimant had "no more than a slight

limitation" in the domain of attending and completing tasks, the questionnaires on the whole

generally support the ALJ's finding that Claimant has a "less than marked limitation" in this

domain.[13] Tr. at 30. Lastly, Claimant's medical records demonstrate she has generally

---

[12]     The most recent Section 504 Plan is dated March 9, 2012, when Claimant was in the
sixth grade. See Tr. at 266-68, 288-90 (duplicate). At the time of the administrative hearing, Claimant was
in ninth grade. Supp. Tr. at 420.

[13]     Notably, three of the four teachers rated the majority of the activities in this domain as
presenting no more than a "slight problem" for Claimant. See Tr. at 179, 220, 228. No teacher opined that
Claimant has a "very serious problem" with any of the listed activities. See Tr. at 179, 220, 228, 238.

(continued...)

average and age-appropriate behavior and abilities and, as the ALJ observed, "reveal[ ] no findings suggestive of [a] disabling impairment." Tr. at 28; see 278-83, 335-37, 353-72, 407-09. Thus, the ALJ's limitation findings in the domain of acquiring and using information and the domain of attending and completing tasks are supported by substantial evidence.

## VI. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 27, 2017.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record

---

[13](...continued)
Further, the ALJ gave the questionnaires only "some weight." Tr. at 28.